JOURNAL ENTRY AND OPINION
Plaintiffs-appellants Timothy Wilmot and Eugene Krywyj filed this action against defendants-appellees Forest City Auto Parts (hereafter FCAP) and the Tyler Corporation following their separation from employment with FCAP. Wilmot and Krywyj each contend that FCAP unlawfully retaliated against them and wrongfully discharged them in violation of Ohio public policy. Additionally, Wilmot contends that FCAP discriminated against him on account of his age. Wilmot and Krywyj further assert that because the Tyler Corporation was their joint employer with FCAP, Tyler shared liability with FCAP for the latter's unlawful employment practices.
The trial court awarded summary judgment in favor of FCAP and the Tyler Corporation on all claims, from which judgment Wilmot and Krywyj bring this joint appeal. We conclude that the Tyler Corporation was correctly awarded a summary judgment, but that genuine issues of material fact precluded a summary judgment in favor of FCAP on the claims asserted by Wilmot and Krywyj. Accordingly, the judgment is affirmed in part and reversed in part and the matter is remanded for further proceedings.
 I
A. WILMOT
Timothy Wilmot began his employment with FCAP in 1976. From May 1978 until February 1995, Wilmot managed Store No. 5. In 1995, Robert Snyder, the thirty-year-old manager of Store No. 35, vacated that position to become Regional Manager for the Central West Region. Wilmot, then age forty-two, accepted a promotional transfer to manage, under Snyder's supervision, Store No. 35. Store No. 35 was larger than Store No. 5 in terms of sales volume, inventory, and customer count.
Friction soon developed between Snyder and Wilmot over the management of Store No. 35. Among other things, Snyder terminated employees without Wilmot's knowledge or approval; transferred employees to other stores; required Wilmot to employ Snyder's father at an hourly rate Wilmot believed was excessive; gave a subordinate authority to hire and fire employees; and imposed a training schedule Wilmot believed was unreasonable. At the same time, Snyder and Wilmot met regularly to discuss the performance of Store No. 35. According to Snyder, Wilmot was not meeting FCAP's performance goals. For his part, Wilmot maintains that the entire FCAP chain experienced a decline in sales, so his failure to meet FCAP's goals was not unique. Snyder warned that Wilmot would be replaced as manager of Store No. 35 if his performance did not improve. Wilmot says, however, Vivian Root, the director of operations who attended meetings with Snyder and Wilmot, never indicated Wilmot's job was in jeopardy.
On March 26, 1996, Snyder ordered Wilmot to report to FCAP's corporate office but would not give a reason. Upon his arrival, Ms. Root introduced Wilmot to attorney Lisa Kainec. Kainec then met with Wilmot privately and questioned him about age discrimination at FCAP. FCAP was then defending itself in federal court against an age discrimination lawsuit known as the Carrell case and sought affidavits to shore up its defense. When Kainec asked Wilmot if there was any discrimination at FCAP, Wilmot said there was and that we were told to hire the young people. According to Wilmot, Kainec drafted under Wilmot's name an affidavit which suggested that there was no age discrimination at FCAP. Wilmot says he refused to accept any averment which denied that discrimination had occurred, because he believed such averments were not true. During the course of the interview, Kainec left the room to speak with Ms. Root and, returning a short time later, Kainec completed drafting an affidavit that Wilmot did accept as true. Ms. Root then told Wilmot he needed to sign the affidavit before he returned to Store No. 35. Believing he would be in trouble if he did not sign the affidavit, Wilmot signed it and requested a copy, but Root told him he did not need a copy.
One week later, on April 2, 1996, Snyder and Root removed Wilmot as manager of Store No. 35, replacing him with a thirty-one-year-old. Snyder and Root offered to reassign Wilmot to Store No. 12, where he would have reduced responsibility and reduced pay. Believing the offer to be an unacceptable demotion, Wilmot refused the transfer and left his employment with FCAP.
B. KRYWYJ
Eugene Krywyj began his employment with FCAP in 1978 and, from 1979 until April 1996, managed Store No. 22. When Snyder became Regional Manager for the Central West Region in 1995, he became Krywyj's supervisor as well. According to Snyder and Root, Krywyj failed to meet FCAP's performance goals. Snyder and Root removed Krywyj from an inventory committee to allow him to focus more on his store. Because he had previously been removed and then returned to the committee, Krywyj construed the removal to be only a motivational technique because his supervisors never wanted him to get comfortable.
On March 26, 1996, Snyder ordered Krywyj to report to FCAP's corporate offices, but would not say why. Snyder reassured Krywyj, however, that his job was not in jeopardy. Upon Krywyj's arrival at the corporate offices, Ms. Root introduced Krywyj to attorney Kainec and told him he had to discuss what he knew about the Carrell age discrimination lawsuit. Krywyj says he reluctantly told attorney Lisa Kainec that FCAP did discriminate and had instructed managers to target a particular age group of 18 to 24-year old individuals to work on our counters. Krywyj says she drafted under his name an affidavit that rephrased his statements to favor FCAP and, when Krywyj took a break, he observed Ms. Root ask Ms. Kainec, Do we have anything yet? Believing he would lose his job unless he signed the affidavit Kainec was drafting for him, Krywyj says he signed the affidavit under duress. Krywyj later testified that it was untrue for him to aver in the affidavit that FCAP did not look to hire any persons of any particular age group and that FCAP did not refuse to hire anyone due to their age.
One week later, on April 2, 1996, Snyder and Root met with Krywyj and informed him that he was being replaced as manager for Store No. 22. They offered to transfer Krywyj to Store No. 2 but, believing the transfer to be an unacceptable demotion, Krywyj rejected the offer and left his employment with FCAP.
 II
Wilmot originally filed suit on his own, but he voluntarily dismissed that case. Wilmot and Krywyj then filed this action jointly against FCAP and the Tyler Corporation. Wilmot maintained claims for age discrimination, retaliation, and wrongful discharge in violation of Ohio public policy. Krywyj maintained claims for retaliation and wrongful discharge in violation of Ohio public policy. The trial court granted summary judgment in favor of FCAP and the Tyler Corporation on all claims.
The appeal contends that the trial court erred in awarding summary judgment to FCAP and the Tyler Corporation. We review the trial court's judgment de novo and use the same standard that the trial court applies under Civ.R. 56(C). Lee v. Sunnyside Honda (1998), 128 Ohio App.3d 657, 660; N. Coast Cable L.P. v. Hanneman (1994), 98 Ohio App.3d 434, 440. Under Civ.R. 56(C), summary judgment is appropriate when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370; Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
The moving party bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record which support the requested judgment. Vahila v. Hall (1997), 77 Ohio St.3d 421, 430. If the moving party discharges this initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. Id. See, also, Mitseff v. Wheeler (1988), 38 Ohio St.3d 112. In deciding whether an evidentiary conflict exists so as to preclude summary judgment, the evidence and the inferences to be drawn from the underlying facts contained in the evidentiary materials must be construed in a light most favorable to the party opposing the motion. Hannah v. Dayton Power Light Co. (1998),82 Ohio St.3d 482, 485; Turner v. Turner (1993), 67 Ohio St.3d 337,341.
For their appeal, Wilmot and Krywyj present five assignments of error. While the first four assignments of error assert substantive claims against FCAP and the Tyler Corporation collectively, the only proffered grounds for Tyler's liability is that it is a joint employer, as argued in the fifth assignment of error. We will initially address the fifth assignment of error because we are convinced that the Tyler Corporation was correctly awarded a summary judgment. The remaining four assignments of error will then be understood to concern only FCAP.
 III
The fifth assignment of error states:
 THE TRIAL COURT ERRED BY GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT AS TO TYLER CORPORATION'S LIABILITY.
This contention is not well taken.
Wilmot and Krywyj argue that the Tyler Corporation should be considered their joint employer with FCAP. They contend that under Title VII, two entities may be considered a single joint employer if, upon review of their intercorporate relationship, one exercises a degree of control that exceeds the control normally exercised by a parent corporation over its separate and distinct subsidiary corporation. See Armbruster v. Quinn (C.A.6 1983),711 F.2d 1332, 1337-1338. Relevant considerations include: (1) interrelations of operation; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control. Id. See also E.E.O.C. v. Wooster Brush Co. Employees Relief Assn. (C.A.6 1984), 727 F.2d 566, 571-572.
In this case, there was no reason to treat the Tyler Corporation as a joint employer with FCAP. Two of Tyler's eight officers and directors are also corporate officers and directors of FCAP's six-member board, but that does not demonstrate excessive control. There is no indication that either Tyler or FCAP is a mere sham. See E.E.O.C. v. Wooster Brush Co. Employees Relief Assn., supra. There is no indication that Tyler was involved in hiring or firing lower level FCAP employees like Wilmot and Krywyj. There is no indication that Tyler established or otherwise sanctioned the employment policies the plaintiffs say FCAP practiced. Whether Krywyj thought of himself as an employee of Tyler is immaterial. On this record, we see no reason why Tyler should be considered a joint employer with FCAP. See E.E.O.C. v. Wooster Brush Co. Employees Relief Assn. The facts of this case are readily distinguishable from other cases in which greater control was demonstrated. See, e.g., Armbruster v. Quinn, supra; N.L.R.B. v. Borg Warner Corp. (C.A. 1981), 663 F.2d 666.
From the evidence presented, we find no reason to disregard the separate corporate entities and to treat the Tyler Corporation as a joint employer with FCAP. Accordingly, the trial court did not err in awarding summary judgment in favor of Tyler Corporation, and the fifth assignment of error is overruled.
 IV
The first assignment of error states:
 THE TRIAL COURT ERRED BY GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT ON APPELLANT WILMOT'S AGE DISCRIMINATION CLAIM BECAUSE WILMOT ESTABLISHED ISSUES OF MATERIAL FACT CONCERNING THE ROLE THAT HIS AGE PLAYED IN APPELLEES' DECISION TO TRANSFER HIM TO SMALLER STORE AND THEREBY CAUSE HIS CONSTRUCTIVE DISCHARGE.
This contention has merit.
Wilmot contends FCAP discharged him or otherwise discriminated against him because of his age, in violation of R.C. 4112.02. Under Ohio law, age discrimination may be proved either directly or indirectly. An employee may establish a prima facie case of age discrimination directly by presenting evidence, of any nature, to show that an employer more likely than not was motivated by discriminatory intent." Mauzy v. Kelly Services, Inc. (1996),75 Ohio St.3d 578, syllabus at para. 1. If, however, the employee is unable to establish a causal link or nexus between the employer's discriminatory statements or conduct and the act that allegedly violte the employee's rights under the statute, then the employee has not proved age discrimination by the direct method of proof. See Byrnes v. LCI Communication Holdings Co. (1996), 77 Ohio St.3d 125, cert. denied (1997), 521 U.S. 1104.
As an alternative, an employee may prove age discrimination indirectly by demonstrating that (1) the employee was a member of the statutorily-protected class; (2) the employee was discharged; (3) the employee was qualified for the position; and (4) theOhio St.3d 578, employee was replaced by, or the discharge permitted the retention of, a person not belonging to the protected class. Barker v. Scovill (1983), 6 Ohio St.3d 146, syllabus at para. 1; Kohmescher v. Kroger Co. (1991), 61 Ohio St.3d 501, syllabus. See also Byrnes v. LCI Communication Holdings Co., supra; Mauzy v. Kelly Services, Inc., supra.[1] If the employee establishes a prima facie case of age discrimination, the employer may then overcome the presumption inherent in the prima facie case by propounding a legitimate nondiscriminatory reason for the plaintiff's discharge. Barker v. Scovill, supra, syllabus at para. 1. If the employer presents a legitimate nondiscriminatory reason for the plaintiff's discharge, the plaintiff must show the employer's reason was only a pretext for unlawful discrimination. Barker v. Scovill, syllabus at para. 1.
In the case at bar, FCAP first contended that Wilmot could not show, by the direct method of proof, that FCAP discriminated against him on account of his age. We agree that Wilmot's evidence did not satisfy the direct method of proof. Wilmot does not identify any specific statements or acts relating to him which show he was subjected to age discrimination. Wilmot relies on statements in which Snyder told him that Store No. 35 may have been beyond what you can do anymore and that maybe a smaller store is better that you are able to, you know, do a little less in that area. In Byrnes v. LCI Communication Holdings Co., supra, where the supervisor questioned whether one of the plaintiffs was suffering from Alzheimer's disease, a divided court majority held that even this statement was insufficient to prove age discrimination by the direct method of proof. By that standard, Wilmot's evidence, even if construed most favorably, would not establish age discrimination by the direct method of proof.
We do believe, however, that in attempting to prove age discrimination by the alternative method of proof under Barker v. Scovilland its progeny, Wilmot's evidence raised genuine issues of material fact to satisfy the necessary elements and to question whether the legitimate nondiscriminatory reason advanced by FCAP was only a pretext for unlawful discrimination. FCAP's motion for summary judgment asserted in part that because Wilmot refused the job reassignment to Store No. 12 and quit his employment, Wilmot could not prove he was discharged, thus failing to satisfy the second B arker element. For his part, Wilmot contends the job reassignment represented a constructive discharge because it was a substantial demotion and a stepping stone to discharge.
The standard for determining whether a constructive discharge occurred was declared in paragraph 4 of the syllabus to Mauzy v. Kelly Services, Inc., supra:
 The test for determining whether an employee was constructively discharged is whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign.
The Mauzy court explained:
 [C]ourts seek to determine whether the cumulative effect of the employer's actions would make a reasonable person believe that termination was imminent. They recognize that there is no sound reason to compel an employee to struggle with the inevitable simply to attain the discharge label. No single factor is determinative. Instead, a myriad of factors are considered, including reductions in sales territory, poor performance evaluations, criticism in front of coemployees, inquiries about retirement intentions, and expressions of a preference for employees outside the protected group. Nor does the inquiry change solely because an option to transfer is thrown into the mix, lateral though it may be. A transfer accompanied by measurable compensation at a comparable level does not necessarily preclude a finding of constructive discharge. Our review is not so narrowly circumscribed by the quality and attributes of the transfer option itself. A sophisticated discriminating employer should not be permitted to circumvent the statute by transferring an older employee to a sham position as a prelude to discharge.
Mauzy, 75 Ohio St.3d at 589 (emphasis added). In Mauzy, the court held that material questions of fact existed as to whether Mauzy was constructively discharged by a proposed job transfer.
Determining whether a constructive discharge occurred requires a case-by-case analysis and an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct on the employee. Scandinavian Health Spa, Inc. v. Ohio Civil Rights Comm. (1990), 64 Ohio App.3d 480, 487
(citation and internal punctuation omitted). See also Chapman v. Adia Services, Inc. (1997), 116 Ohio App.3d 534; Zimmerman v. Eagle Mtge. Corp. (1996), 110 Ohio App.3d 762. In Chapman v. Adia Services, Inc., supra, the court found material questions of fact from evidence indicating that the proposed job transfer would have resulted in diminished compensation under unacceptable working conditions.
In this case, FCAP argues that it gave Wilmot a reasonable alternative by offering him the manager's position at Store No. 12 but that Wilmot unreasonably refused to use that opportunity as a fair chance to succeed. For his part, Wilmot maintained that Store No. 12 was a dying store that had been in decline over a period of six to eight years. Wilmot's evidence, moreover, showed that had he accepted the transfer to Store No. 12, Wilmot would have had decreased management responsibility at a store which had lower sales volume. Wilmot would have personally experienced a fifty percent reduction in pay. Construing the evidence and inferences most favorably to Wilmot, we cannot say as a matter of law that Wilmot unreasonably refused FCAP's offer. We are convinced that material factual disputes as to whether Wilmot was constructively discharged demand that this question be resolved by trial and not by summary judgment.
FCAP additionally contends that Wilmot was unqualified for the position and thus he cannot establish the third element under Barker. FCAP says Wilmot's lack of qualifications is shown by his admitted failure to meet the performance goals FCAP set for him. Once the employer articulates a legitimate nondiscriminatory reason for its action, the employee must show that reason to be mere pretext for unlawful discrimination. Pretext may be shown by demonstrating that the proffered reason had no basis in fact, did not actually motivate the discharge, or was otherwise insufficient to motivate the employer's action. See Frantz v. Beechmont Pet Hosp. (1996), 117 Ohio App.3d 351, 359.
In reply, Wilmot contends (1) he was qualified for the position, (2) his failure to meet FCAP performance goals was not unique and indeed was consistent with FCAP's area-wide performance decline, and (3) Snyder sabotaged Wilmot's performance to enhance Snyder's own image. In support, Wilmot provides the following evidence. The company's 10-k form for 1996 showed operating profit dropped 35% in 1995. Volumes decreased, another manager confirmed, pretty much across the board because of new auto parts stores in the area. (Essman Tr. 41.) At the store Wilmot was promoted to, sales were in a hole when he took over, said Angela Mills, the former bookkeeper. (Tr. 18-19.) In addition, there is evidence of Wilmot's 16 previous years as a successful store manager, along with evidence that Snyder had consistently undermined Wilmot's authority at Store No. 35. Taken together, this evidence sufficiently challenges FCAP's explanation for its decision.
There is, moreover, evidence of a hostile work environment. Plaintiff provided evidence of Snyder's animosity toward older employees and applicants. On one occasion, for example, Snyder demanded that Wilmot fire a veteran counterman:
 * * * when I came over into Lakewood I had Mark, I had another guy that was an older guy, and Bob kept telling me every quarter they don't fit the image, get rid of them, you know. You go over to the high schools, find these young guys. That's not the image I want at Lakewood. We don't want them in the stores.
(Wilmot Tr. 66.) This summary describes an employment decision, along with a general policy on hiring and firing, based on age.
Krywyj corroborates this policy when he reports that Snyder consistently threw out employment applications because they were from older applicants. (Krywyj Tr. 48-49.) Wilmot clearly stated that Snyder's preference for young high school applicants was an FCAP preference expressed in the training of managers:
 Well, we were told to go hire people out of high school, young high school guys. This was brought up at meetings. This was brought up at seminars, to hire the younger guys, they are less baggage, they are less insurance, you could get them cheaper. I hired an older guy when I was at Lakewood and Bob Snyder had asked me why I hired him, and I said because he was a good guy, he is a worthwhile guy. He says he doesn't fit our image, though. You shouldn't have hired him.
(Wilmot Tr. 18-19.) While such a hostile work environment may not meet the narrow criteria of Byrnes, supra, for a claim of age discrimination as the claimant articulated it under the direct method, this evidence can contribute to a claim of discrimination based on indirect proof.
When we consider inferences that may reasonably be drawn from statements store representatives made regarding FCAP's policy of hiring and promoting employees based on age, taken together with statements made by FCAP to Wilmot and Wilmot's ultimate removal as manager of Store No. 35, we are convinced that genuine issues of material fact exist as to whether the stated reason for Wilmot's reassignment was mere pretext for unlawful age discrimination against him. Because there exist factual questions as to whether FCAP engaged in unlawful age discrimination against Wilmot, this claim could not be decided by summary judgment. Accordingly, we must sustain the first assignment of error.
 V
Because the second and third assignments of error have a common basis in fact and in law, we will address them jointly. These assignments of error respectively contend:
 THE TRIAL COURT ERRED BY GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT ON APPELLANT WILMOT'S RETALIATION CLAIM BECAUSE WILMOT ESTABLISHED ISSUES OF MATERIAL FACT CONCERNING THE ROLE THAT HIS PROTECTED ACTIVITY PLAYED IN APPELLEES' DECISION TO TRANSFER HIM TO A SMALLER STORE AND THEREBY CAUSE HIS CONSTRUCTIVE DISCHARGE.
 THE TRIAL COURT ERRED BY GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT ON APPELLANT KRYWYJ'S RETALIATION CLAIM BECAUSE KRYWYJ ESTABLISHED ISSUES OF MATERIAL FACT CONCERNING THE ROLE THAT HIS PROTECTED ACTIVITY PLAYED IN APPELLEES' DECISION TO TRANSFER HIM TO A SMALLER STORE AND THEREBY CAUSE HIS CONSTRUCTIVE DISCHARGE.
These assignments of error are well taken.
Wilmot and Krywyj contend that FCAP unlawfully retaliated against them when it constructively discharged them after they independently confirmed allegations made in the pending Carrell litigation that FCAP engaged in age discrimination. In particular, Wilmot and Krywyj say that supervisor Snyder instructed each of them on March 26, 1996 to report to FCAP's corporate offices but would not say why. Each says he was introduced to attorney Kainec by Ms. Root. Each says he then met privately with attorney Kainec who questioned them about allegations made in the pending Carrell litigation of age discrimination at FCAP. Wilmot and Krywyj say they separately told attorney Kainec that FCAP representatives had told them to hire persons in a targeted age bracket. Attorney Kainec then drafted an affidavit which denied knowledge of age discrimination in FCAP's employment practices.
Wilmot says he rejected drafts of the affidavit and explained to her he personally observed management express a policy of age discrimination at FCAP. Wilmot says that after he saw attorney Kainec speak with Ms. Root during a break, attorney Kainec, with some hostility, completed drafting an affidavit omitting averments Wilmot believed were untrue. Ms. Root then demanded Wilmot sign the affidavit before he returned to his store.
Krywyj says that during a break in his interview, Ms. Root asked Ms. Kainec, Do we have anything yet? Krywyj says he feared losing his job unless he signed the affidavit. Krywyj subsequently testified that his averments indicating FCAP did not look to hire any persons of any particular age group or refuse to hire anyone due to their age were untrue.
One week later, on April 2, 1996, Snyder and Root removed each of them as managers of the store at which each was assigned. Each says Snyder and Root offered to reassign them to a smaller store. Each contended that the reassignment constituted a substantial demotion tantamount to a constructive discharge from their employment.
Wilmot and Krywyj contend that FCAP unlawfully retaliated against them for opposing FCAP's discriminatory employment practices, in violation of R.C. 4112.02(I). Under R.C. 4112.02(I), it is an unlawful discriminatory practice [f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in [R.C. 4112.02] or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code. Wilmot and Krywyj assert that FCAP took action against them because they confirmed FCAP's alleged discriminatory employment practices and, in Wilmot's case, refused to deny those practices or, in Krywyj's case, initially attempted to confirm these practices but finally relented under duress and falsely denied them. The issue then presented for our review is whether there are genuine issues of material fact to require Wilmot and Krywyj's retaliation claims to go forward to trial. We believe material questions of fact do exist.
In Mack v. B.F. Goodrich Co. (1997), 121 Ohio App.3d 99, our court said that an employee's prima facie case of retaliatory discharge requires evidence showing that (1) the employee engaged in protected activity, (2) the employee's protected activity was known to the employer, (3) the employer took adverse employment action against the employee and stated reasons that were not the true retaliatory reason, and (4) there is a causal connection between the protected activity and the adverse employment action. Id. at 104 (citing Rudy v. Loral Defense Sys. (1993),85 Ohio App.3d 148).[2] Whether to draw an inference of retaliatory motivation sufficient to establish a causal connection between the protected activity and the adverse employment action may depend on whether the retaliatory action closely follows the employee's participation in the protected activity. See Mack v. B.F. Goodrich Co., supra. See also Baker v. The Buschman Co. (1998), 127 Ohio App.3d 561; Neal v. Hamilton Cty. (1993), 87 Ohio App.3d 670.
FCAP first denies that Wilmot engaged in protected activity, and thus argues Wilmot failed to prove the first element.[3] FCAP's evidence, however, only challenged whether Wilmot was correct in perceiving that FCAP had practiced age discrimination against others. Irrespective of whether Wilmot's perception was right or wrong, there exists at least a question of fact as to whether he engaged in protected activity when he was asked to make a sworn statement regarding matters pending in a federal court case on discrimination at the store.
With regard to both Wilmot and Krywyj, FCAP denies that it took any adverse employment action against them. FCAP specifically denies that either Wilmot or Krywyj were constructively discharged and maintains that they unreasonably refused the proposed transfers. As we noted in Section IV, ante, the question is whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign. Mauzy v. Kelly Services, Inc., supra. This determination must be made on a case-by-case basis. Scandinavian Health Spa, Inc. v. Ohio Civil Rights Comm., supra. Both Wilmot and Krywyj presented evidence to support their contentions that the stores to which they would have been transferred were failing and that each would have experienced a significant reduction in pay. If their evidence is accepted, FCAP's offer arguably left them with little real choice but to resign.
FCAP says that any subjective dissatisfaction in being reassigned to a lower volume store at reduced pay is insufficient to prove constructive discharge. But unlike subjective complaints like relocating a desk or disparaging comments that were considered insubstantial in Schwartz v. Comcorp, Inc. (1993), 91 Ohio App.3d 639, the fifty-percent reduction in pay Wilmot would have experienced is hardly a trifling subjective grievance. Likewise, Krywyj showed that his pay to manage Store No. 2 would have been significantly less than his pay for managing Store No. 22. We believe there is at least room for disagreement as to whether FCAP's proposed transfers with a substantial drop in compensation would have made working conditions so demeaning that a reasonable person under the circumstances would have felt compelled to resign. This question cannot be decided by summary judgment.
FCAP further contends there is no evidence of a causal connection between any protected activity and any adverse employment action. FCAP denies it retaliated against Wilmot and Krywyj because the evidence submitted below showed that Snyder and March 13, 1996.[4] Because this decision was made before Wilmot and Krywyj met with attorney Kainec on March 26, 1996, FCAP argues that the reassignment of Wilmot and Krywyj on April 2, 1996 could not be retaliatory. However, Krywyj testified that Snyder reassured him just before the meeting with attorney Kainec that his job was not in jeopardy. Such reassurance conflicts with the company's claims that it had already decided to reassign Krywyj. Since the announcement of that decision was made April 2, 1996, only one week after the March 26, 1996 interviews, an inference of retaliatory motivation may reasonably be drawn, if we construe the evidence favorably to the nonmoving party.
Ode v. Luedtke Engineering Co. (Apr. 2, 1998), Cuyahoga App. Nos. 73103, 73134, unreported, cited by FCAP, is factually distinguishable because the protected activity in that case occurred after the adverse employment action was announced. Construing the evidence and inferences most favorably to Wilmot and Krywyj, we believe the evidence presents at least a question of fact as to whether there was a causal connection between their March 26, 1996 interviews and their April 2, 1996 transfers.
Because there exist genuine issues of material fact as to whether FCAP retaliated against Wilmot and Krywyj for engaging in protected activity, we must sustain their second and third assignments of error.
 VI
For their fourth assignment of error, Wilmot and Krywyj state:
 THE TRIAL COURT ERRED BY GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT ON APPELLANTS' WRONGFUL DISCHARGE CLAIM BECAUSE APPELLANT WILMOT AND APPELLANT KRYWYJ EACH ESTABLISHED ISSUES OF MATERIAL FACT CONCERNING THEIR CLAIMS THAT APPELLEES VIOLATED OHIO PUBLIC POLICY BY TRANSFERRING APPELLANTS TO SMALLER STORES BECAUSE OF THEIR AFFIDAVIT INTERVIEWS, THEREBY CAUSING THEIR CONSTRUCTIVE DISCHARGE.
This assignment of error has merit.
There is no dispute that Wilmot and Krywyj were at-will employees. As a general rule, at-will employment may be terminated by either employer or employee at any time for any or no reason. See Fawcett v. G.C. Murphy Co. (1976), 46 Ohio St.2d 245. An employer may not, however, discharge an employee where the discharge violates clear public policy established by the Constitution and statutes of the United States, the Constitution and statutes of Ohio, administrative rules and regulations, and/or the common law. Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134; Collins v. Rizkana (1995), 73 Ohio St.3d 65; Painter v. Graley (1994), 70 Ohio St.3d 377; Greeley v. Miami Valley Maintenance Contractors, Inc. (1990), 49 Ohio St.3d 228.
To establish the public policy tort for wrongful discharge, these elements must be shown:
 1. That a clear public policy existed and was manifested in a federal or state constitution, statute or administrative regulation, or in the common law (the clarity element).
 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
 4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).
See Collins v. Rizkana, supra, 73 Ohio St.3d at 69-70 (quoting H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398-399); Takach v. Am. Med. Technology, Inc. (1998), 128 Ohio App.3d 457,463. The clarity and jeopardy elements are questions of law to be determined by the court, while the causation and overriding justification elements are questions of fact to be determined by the trier of fact. See Collins v. Rizkana, 73 Ohio St.3d at 70.
In this case, we have little difficulty in concluding that there exists a clear public policy which requires a witness to testify truthfully in court proceedings and forbids either punishing the witness who testifies truthfully or influencing the witness to testify falsely. Thus in Sabo v. Schott (1994),70 Ohio St.3d 527, the court declared that terminating an employee for having testified truthfully, albeit unfavorably to the employer, violates Ohio public policy. In Anders v. Specialty Chem. Resources(1997), 121 Ohio App.3d 348, the court held that a valid public policy claim was stated when the plaintiff alleged he was discharged because he refused to provide false evidence.
For its part, FCAP argues that because the substantive claims asserted by Wilmot and Krywyj failed for lack of evidence, their public policy tort claims likewise failed. We have determined, however, that the claims asserted by Wilmot and Krywyj against FCAP did not fail for lack of evidence. FCAP further argues that transferring or demoting an employee for performance-related reasons does not violate public policy. Wilmot and Krywyj, on the other hand, contend that there are material questions of fact as to whether they were constructively discharged because they corroborated damaging allegations made in the Carrell litigation that FCAP had a policy or practice that sanctioned age discrimination. Construing the facts and inferences most favorably to Wilmot and Krywyj, we believe questions of fact exist as to whether FCAP's conduct towards Wilmot and Krywyj violated Ohio public policy. Because those factual questions cannot be decided by summary judgment, we must sustain the fourth assignment of error.
 VII
For the reasons stated, we overrule the fifth assignment of error and affirm the award of summary judgment in favor of the Tyler Corporation. We sustain the first, second, third, and fourth assignments of error and reverse the grant of summary judgment in favor of FCAP. The cause is remanded to the Court of Common Pleas for further proceedings.
This cause is affirmed in part, reversed in part and remanded for further proceedings.
It is, therefore, ordered that appellants and appellees shall share the costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ____________________________ DIANE KARPINSKI, JUDGE
ANN DYKE, A.J., CONCURS IN JUDGMENT ONLY; TERRENCE O'DONNELL, J., DISSENTS (See Dissenting Opinion).
[1] The fourth element under the Barker syllabus has been questioned but has not been changed by the Supreme Court of Ohio. In Mauzy, the Supreme Court of Ohio observed that the United States Supreme Court held in O'Connor v. Consolidated Coin Caterers Corporation (1996), 517 U.S. 308, that an age-discrimination plaintiff suing under the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., need only show that his replacement was substantially younger, which holding modified the fourth element of the prima facie case under McDonnell Douglas Corporation v. Green (1973), 411 U.S. 792. The Mauzy court, however, questioned, but did not alter, the fourth element as stated in the Barker syllabus. See Mauzy, 75 Ohio St.3d at 582, n. 2.
In Byrnes v. LCI Communication Holdings Co., supra, decided eight months after O'Connor, the Supreme Court of Ohio, without mentioning O'Connor, relied on the fourth element of Barker to reject the plaintiff's indirect proof because the plaintiff did not show he was replaced by, or the discharge permitted the retention of, a person not belonging to the protected class. See Byrnes, 77 Ohio St.3d at 129; id. at 131 (Douglas, J., concurring).
After Byrnes, some courts, including our court, have adhered to the fourth element as stated in the syllabus law of Barker and Kohmescher v. Kroger Co., supra. See, e.g., Srail v. RJF International Corp. (1998), 126 Ohio App.3d 689, 698; McIntosh v. Stanley-Bostitch, Inc.(S.D.Ohio 2000), 82 F. Supp.2d 775, 785-786. At least one other Ohio court, on the other hand, has applied the O'Connortest. See Outzen v. Continental General Tire, Inc. (Feb. 2, 2000), Summit App. No. 19604, unreported.
This question need not be considered here, however, because FCAP, accepting the Barker standard in the trial court and here, argued only that Wilmot could not establish the second and third elements. The fourth element consequently is not at issue in this case.
[2] The Ohio appellate districts are not entirely uniform in identifying the elements necessary to prove actionable retaliation. See, e.g., Thatcher v. Goodwill Industries of Akron (1997),117 Ohio App.3d 525, 534-535; Chandler v. Empire Chem. Inc. (1994),99 Ohio App.3d 396, 402. Indeed, the Ninth Appellate District's decision in Thatchervaries from its earlier pronouncement in Rudy.
[3] FCAP does not argue that Krywyj did not engage in protected activity.
[4] Wilmot and Krywyj contend a dispute exists over when Snyder and Root decided to reassign them. They say that in FCAP's initial response to the second set of interrogatories and requests for production of documents, FCAP said Snyder and Root made the decision on or about April 1996 but, in FCAP's amended and supplemental response to this discovery request, FCAP changed its answer to say Snyder and Root made the decision on or about March 13, 1996. FCAP's amended and supplemental response was filed in the court below, but FCAP's initial discovery response was not and is before us now only as an exhibit to the Reply Brief filed in this appeal. We are bound to decide this appeal based on the record below and may not consider new evidence that was not a part of the trial court proceedings. See Papadelis v. First American Sav. Bank (1996), 112 Ohio App.3d 576, 581.
 DISSENTING OPINION